RECEIVED
IN ALEXANDRIA, LA
MAR - 4 2009
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JOANN D. GILMER<br>Appellant | CIVIL ACTION<br>NO. 08-0344 |
| VERSUS | |
| MICHAEL J. ASTRUE<br>COMMISSIONER OF SOCIAL SECURITY<br>Appellee | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

JoAnn D. Gilmer ("Gilmer") filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on or about November 29, 2005 alleging a disability onset date of April 16, 2005 (R. 13, 55-57). The applications were denied June 2, 2006 and Gilmer filed a request for hearing on July 28, 2006 (R. 13-22). A hearing was held on July 24, 2007 in Alexandria, Louisiana before Lawrence Ragona, Administrative Law Judge ("ALJ"). Gilmer, her attorney, Katherine Geary, and Vocational Expert ("VE") Lionel J. Bordelon attended the hearing (R. 543-573).

The ALJ issued a decision dated September 25, 2007 in which he found Gilmer not disabled under sections 216(1), 223(d) and 1614(a)(3)(A) of the Social Security Act (R. 13-22). Gilmer filed a request for review with the Appeals Council on November 25, 2007 and the Appeals Council noted the inclusion of additional evidence in the record including counsel's November 25, 2007 letter as well

as a medical record and report from James W. Quillin, Ph.D.. (R. 9, 525-542). The request for appeal was denied on January 25, 2008 and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner") as of that date (R. 6-8).

To qualify for SSI and/or DIB, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income and other financial resources. 42 U.S.C. 1382(a). To establish disability, a claimant must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve (12) months. Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

## SUMMARY OF PERTINENT FACTS

At the time of the hearing, Gilmer was 40 years old (R. 547). She complained of physical and mental impairments which included chest pain, depression, anxiety, asthma, allergies, fibromyalgia, circulation problems, a fractured wrist, torn ligaments in her shoulder and a fractured ankle which required an additional surgery to replace a broken screw. Gilmer testified she could stand ten minutes at a time for two hours a day. She further advised that

her spine affected her ability to sit and she was only able to lift five or ten pounds (R. 555-556). She used a cane for stabilization and a brace for her ankle (R. 564).

While she suffered and sought treatment for depression, Gilmer advised that she took Lexapro which helped her with the depression (R. 556-557).

Gilmer testified that she lived with her son and daughter and currently had no income (R. 547-548). Her children helped her with grocery shopping and a personal care provider performed her chores. She used medial transport to transfer her to and from Rapides Regional Medical Center. Her social interaction included attending bible study on Wednesdays for two hours and church services on Sunday (R. 558-560).

Gilmer last worked in the summer of 2007 as a child care provider but was forced to quit due to her impairments (R. 550). She also held a job in October of 2006 as a cashier at Stage. She worked there three months before she was forced to quit because of circulation problems in her legs (R. 550, 553). She was also forced to quit her work in the home health field due to illness - meningitis and pneumonia (R. 551).

During the relevant period, April 16, 2005 through September 25, 2007, claimant sought medical treatment for a variety of ailments at several medical facilities. She sought treatment for a sprained wrist, fibromyalgia, chest pain, respiratory problems

and other ailments at the Medical Center of Aurora in Colorado from April 16, 2005 through June 5, 2006 (R. 207-272). Gilmer then moved to Alexandria, Louisiana and on September 29, 2006 she went to Rapides Primary Care - MSS where Keith Winfrey, MD ("Winfrey"), treated her for ailments including allergies, lower back pain, leg pain and a cough (R. 480-518). Dr. Winfrey also filled out two form regarding Gilmer's capacity for physical activity based on her physical and mental impairments. These forms were completed on September 29, 2006 and June 1, 2007 to assist the Louisiana Department of Social Services Office of Family Support to determine whether Gilmer continued to qualify for cash assistance (R. 384-385, 453-454).

Medical evidence in the record also reveals that Gilmer sought treatment for her fractured ankle at Orthopaedic and Sports Medicine Associates from January 26, 2007 through May 1, 2007 (R. 415-451). She underwent surgery at Rapides Regional Medical Center on or about February 12, 2007 for her ankle and was seen for follow up through at least June 6, 2007 (R. 461-479). Medical records also show that Gilmer sough treatment at Louisiana Allergy and Asthma Specialists for her asthma (R. 398-414).

The ALJ considered the entire record and found Gilmer had not been under a disability, as defined by the Social Security Act, from April 16, 2005 through the date of the decision (R. 13). In arriving at this conclusion, the ALJ reviewed, among other things,

the medical evidence which indicated Gilmer had the following severe impairments: asthma, hypertension, status post fractured ankle, fibromyalgia and depression. The ALJ also determined that the impairments, whether alone or in combination, did not meet or equal any of the Listings in 20 C.F.R. 404, Subpart P, Appendix 1(R. 15).

The ALJ then considered all of Gilmer's symptoms, including pain, and evaluated the extent to which they were consistent with the objective medical evidence as well as the other evidence in the record as required by 20 C.F.R. §404.1529, 20 C.F.R. §416.929 and Social Security Rulings (SSR) 96-4p and 96-7. Additionally, the ALJ considered opinion evidence in accordance with the requirements of 20 C.F.R. §404.1527, 20 C.F.R. §416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. After much discussion of his finding, the ALJ ultimately concluded that Gilmer possessed the Residual Functional Capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently; stand/or walk for two hours in an eight hour workday; and sit for six hours in an eight hour workday. The ALJ further determined that she could not perform complex tasks, could not balance and must avoid excessive exposure to pulmonary irritants (R. 17-20). Considering Gilmer's age, education, work experience and RFC as well as the testimony of the VE, the ALJ determined that Gilmer could make an successful adjustment to other work that existed in significant numbers in the national economy.

Therefore, he found Gilmer was not disabled (R. 20-21).

## Standard of Review

In considering Social Security appeals such as the one presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices are for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have

authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But, to make a finding that substantial evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## Issues

Gilmer raises the following issues for judicial review on appeal:

1. The Appeals Council erred in failing to follow its own policy and procedures with regard to legal arguments and additional evidence submitted to it;

2. The ALJ erred in failing to accord proper weight to the opinions of the treating physicians, by improperly giving more weight to the opinion of the non-examining reviewing physician;

3. The ALJ failed to properly evaluate all of Gilmer's medically determined impairments, in combination, resulting in Steps 3 through 5 of the Evaluation Process being flawed.

## Failure to follow policies and procedures

Gilmer argues that the Appeals Council failed to follow its own policy and procedure - to review a case if "...the decision is not supported by substantial evidence..." or if it "receive[s] new and material evidence and the decision is contrary to the weight of all of the evidence now in the record." Gilmer contends that the Appeals Council failed to properly review and evaluate the

additional evidence submitted after the hearing.

Counsel for Gilmer scheduled a consultative psychological evaluation of Gilmer before James Quillen, Ph.D. prior to her hearing before the ALJ; however, Quillen had to reschedule the appointment. The ALJ was advised of the same at the July 24, 2007 hearing and he agreed to hold the record open for thirty days to allow for submission of the report. Because Quillen failed to submit his report to Gilmer prior to the close of the record, the ALJ did not review the report.

Gilmer then submitted the report to the Appeals Council. Both the report and counsel's November 25, 2007 letter were made part of the record by the Appeals Council. Nevertheless, the Appeals Council found that the new evidence "d[id] not provide basis for changing the Administrative Law Judge's decision" (R. 6-9). The undersigned agrees.

Gilmer argues in her briefs (Doc. Items 7, 9) that the reports of both Quillin and William Graham, MD PC "clearly establish that Ms. Gilmer suffered from considerably more than just 'depression'." (Doc Items 7, p.5 and 9, p.3). However, there is no reasonable possibility that these reports would or do change the outcome of the ALJ's decision.

With respect to Graham's report, Gilmer relies upon his finding that she suffered from major depressive disorder, panic disorder without agoraphobia and his notations of memory deficits,

8

limitations in ability to sustain concentration, persistence and pace and her guarded social interaction. The notations regarding memory, concentration, persistence, pace and social interaction are just that, notations. There is no language to indicate whether these are mild, moderate or severe restrictions. Therefore, they are of no value in proving that Gilmer meets a mental health listing. Additionally, there is nothing in the record indicating episodes of decompensation.

Gilmer also argues that Graham and Quillin's reports support one another but the findings and opinions expressed by the two are different with the exception of depression and complaints of pain. Quillen doesn't find Gilmer to suffer from a panic disorder nor does he state that her memory, concentration, persistence, pace or social function are limited. While Quillin does state that he believes her condition is incompatible with work activities, he does not provide any further detail or limitations. Finally, his statement that he believes she appears disabled is a conclusion reserved for the Commissioner. Therefore, there is nothing within either Graham or Quillin's reports which would alter the ALJ's finding that Gilmer does not meet listing 12.04 or 12.06 either alone or in combination.

<u>Weight given to treating source opinion</u>

Gilmer also contends that her treating sources' opinions were not afforded proper weight. The Fifth Circuit has long held that

ordinarily the opinions, diagnoses and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments and responses should be accorded considerable weight in determining disability. Myers v. Apfel, 238 F.3d 617, 621 (5th Cir. 2001); Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. Martinez v. Chater, 64 F.3d 172, 176 (5th Cir. 1995) (per curium), citing 20 C.F.R. §404.1527(d)(2). The opinion of a specialist is generally accorded greater weight than that of a non-specialist. Newton v. Apfel, 209 F.3d 448, 453 (5th Cir. 2000).

While the opinions and diagnoses of the claimant's treating physician should be given considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. Newton, 209 F.3d at 453; Martinez, 64 F.3d at 176. When "good cause" is shown, the ALJ may give less weight, little weight or even no weight to a physician's testimony. Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994). The good cause exceptions include statements that are brief and conclusory, statements not supported

by medically acceptable clinical, laboratory or diagnostic techniques or statements otherwise unsupported by the evidence. Id.

Gilmer contends that the ALJ may under no circumstance rely upon the medical opinion of a nontreating, nonexamining source pursuant to the ruling in Newton. Newton, 209 F.3d at 453. However, in Newton, the Fifth Circuit found that the nontreating, nonexamining physician failed to review all of Newton's medical records and failed to take into account other medical opinions supporting Newton's disability. Therefore, the opinion was conclusory and unsubstantiated. Here the ALJ did not simply "summarily reject" the opinions of Gilmer's treating physician. Rather, he considered the medical evidence submitted by all of her treating physicians as well as all other medical evidence contained therein. Out of all of these medical records and treating physicians, the ALJ took exception with the opinions expressed by two.

Gilmer argues that the ALJ failed to perform a detailed analysis of the treating physician's views under 20 C.F.R. §404.1527(d)(2). The Fifth Circuit has held that, absent reliable medical evidence from a treating or examining physician controverting the claimant's specialist, an ALJ my reject the opinion of a treating physician only if the ALJ performs such a detailed analysis. 20 C.F.R. §404.1527(d)(2) requires

consideration of (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence in the record, (5) the consistency of the opinion with the record as a whole, and (6) the specialization of the treating physician. Newton, 209 F.3d at 453. Though the ALJ did not list each factor separately, it is evident that he considered these factors as well as the good cause factors before rendering his decision.

With respect to Dr. Pace's opinion, the ALJ noted that Dr. Pace failed to provide a diagnosis which supported she suffered from a limited respiratory capacity. This is a sufficient basis for rejecting Dr. Pace's opinion and the reason is well supported by the record. Dr. Pace treated Gilmer on the same date he completed her Arapahoe/Douglas Works form (R. 311-314). In his medical notes, he stated that she was "dyspneic with speaking but [was] able to walk and talk at the same time." Additionally, he found that her respiration rhythm and movements were normal and noted no lung problems. Finally, he noted that a diagnosis was not clear (R. 313-314).

Additionally, the ALJ properly rejected Dr. Pace's conclusion that Gilmer was disabled for six months. No reason need be given for rejecting a treating physician's conclusion that a claimant is disabled or unable to work.

Gilmer also complains that the opinions disclosed by Dr. WInfrey in the forms submitted by the Louisiana Department of Social Services Office of Family were not afforded appropriate weight. The ALJ stated that he agreed with the portion of the opinion which concluded Gilmer could perform light duty work; however, he discounted the remainder of the opinion. As previously stated, an ALJ may discount any physician's opinion for good cause, and the weight of the evidence shows that the ALJ had good cause for doing so. The objective evidence from Dr. Winfrey's treatment notes show that Gilmer presented on September 21, 2006 for an initial visit and a cough. In a follow up visit a week later, Gilmer stated that she felt better (R. 510-515). Yet the physical assessment form Dr. Winfrey completed the following day, September 29, 2006, indicated that Gilmer was limited in her physical abilities. This assessment is not supported by the objective evidence.

The form completed in June of 2007 concludes that Gilmer is capable of light duty with frequent breaks and limited standing or walking (two hours a day) and is capable of only part time work (R. 454). Yet, the treatment notes leading up to that assessment show nothing to support the conclusion. Gilmer presented with lower back pain in November of 2006 and a radiology report indicated that her lumbar spine was normal. When she returned for a follow up, she continued to complain of back pain so the doctor referred her

to physical therapy. The assessment by the physical therapist was that Gilmer suffered from a lumbar strain but her prognosis was good. Moreover, in February of 2007, Gilmer presented to the doctor for medial clearance for surgery on her ankle and clearance was provided. The remaining visits were regarding allergies and follow up visits including one on July 2, 2007, just a month after the form was completed, in which she stated that her symptoms had improved (R. 483-509). As with the September 2006 assessment, the medical evidence does not support the June 2007 assessment. Therefore, the ALJ found good cause to and did in fact properly discount Dr. Winfrey's opinion.

Medically Determined Impairments

Gilmer's third issue for review is whether the ALJ failed to properly evaluate all of her medically determined impairments in combination. Specifically, Gilmer contends that the evidence establishes she suffered from obstructive sleep apnea and obesity but the ALJ failed to consider her obesity and its effect on her coexisting or related impairments.

Gilmer complains that the ALJ failed to find her obesity and sleep apnea to be severe impairments. It is the claimant who has the burden of proving disability by establishing a mental or physical impairment that is severe. Cook v. Heckler, 750 F.2d 391 (5th Cir. 1985). In order to be a severe impairment, the obesity and sleep apnea must significantly limit the claimant's ability to

14

perform basic work activities; yet, Gilmer sets forth no limitations imposed by either her obesity or her sleep apnea. There is no testimony from Gilmer and no follow up by her attorney to either Gilmer or the VE regarding either obesity or sleep apnea. Additionally, though Gilmer points to assessments of height and weight and diagnoses of obesity in the medical records, she fails to cite a specific instance of notations that the obesity adversely affects her ability to work and/or exacerbates any other impairment. The mere diagnosis of a condition, such as obesity, without resulting significant functional restrictions, is not considered disabling under the Social Security Act. Hames v. Heckler, 707 F.2d 162 (5th Cir. 1983).

A review of the record indicates that the ALJ did conduct a thorough review of the record examining all medical conditions including obesity. In determining Gilmer's residual functional capacity, the ALJ references at least two medical opinions in which the doctors note her obesity. However, the substantial weight of the evidence indicates that neither her sleep apnea nor obesity rose to the level of a severe impairment nor exacerbated any other impairment. Accordingly, Gilmer's contention is without merit.

Based upon the foregoing, IT IS RECOMMENDED that Gilmer's appeal be DENIED WITH PREJUDICE.

## Objections

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond too another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING AN APPEAL ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _____ day of March, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE